IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NICHOLAS DUPREE,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO.   25-3230 |
| | : | |
| **GWENDOLYN N. BRIGHT,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**MURPHY, J.**                                                            January 28, 2026

Plaintiff Nicholas Dupree, an inmate incarcerated at SCI Benner Township, initiated this civil rights action by filing a *pro se* complaint seeking declaratory and injunctive relief, as well as monetary damages.  DI 2.  Mr. Dupree subsequently filed an amended complaint (DI 7), which is the governing pleading.[1]  The amended complaint names the following defendants: the City of Philadelphia; Cherelle Parker, in her official capacity as the Mayor of Philadelphia; Hon. Gwendolyn N. Bright, in her personal and administrative capacities; Kathleen Martin; Jerrold D. Colton; and Lawrence S. Krasner in his official and individual capacities.  DI 7 at 1-2.  For the following reasons, we grant Mr. Dupree leave to proceed *in forma pauperis* and dismiss the amended complaint without prejudice.

**I.      FACTUAL ALLEGATIONS**[2]

The allegations in Mr. Dupree's amended complaint are brief.  Mr. Dupree claims that on

---

[1] *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that "an amended pleading supersedes the original pleading," meaning "the most recently filed amended complaint becomes the operative pleading") (citations omitted); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (per curiam) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings.").

[2] The factual allegations set forth here are taken from Mr. Dupree's amended complaint. We adopt the pagination supplied by the CM/ECF docketing system.

1

August 17, 2017, he "entered into two bilateral contracts with the Philadelphia Court of Common Pleas" (CCP) when he "paid $38.70 for authentication of charging instruments signed by Kathleen Martin." DI 7 at 2. The complaint identifies Ms. Martin as a court administrator. *Id.* at 1. Mr. Dupree contends that a "secondary contract" was formed when the court paid $3.08 to mail the certified material to him. *Id.* at 2. He avers, without further explanation, that the "unilateral revocation of authentication is an unconstitutional impairment of contract." *Id.* Mr. Dupree further contends that the "existence and execution" of the contracts are evidenced by five exhibits, but there are no exhibits attached to any of his pleadings. *Id.*

Mr. Dupree also avers that on June 9, 2025, Mr. Colton "impersonated a district attorney in a sham proceeding to intimidate [Mr. Dupree] and obstruct his rights." *Id.* He claims that Mr. Colton was "directed by" Judge Bright, and that District Attorney Krasner was aware "of the fraudulent actions and the underlying contracts, but failed to act." *Id.* Mr. Dupree asserts that Judge Bright "used court authority to shield misconduct, violate due process, and suppress [his] contractual rights." *Id.* Finally, he avers that Mayor Parker and the City "maintained customs that deny equal access and protections to pro se litigants." *Id.*

Mr. Dupree asserts claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. *Id.* at 2-3. He alleges that the defendants deprived him of procedural and substantive due process by revoking his contract rights, and he contends that he was denied the right to make and enforce contracts and seek judicial redress in violation of the First and Fourteenth Amendments to the United States Constitution.[3] *Id.* at 2-3. Mr. Dupree claims that certain defendants conspired to

---

[3] Mr. Dupree also asserts a claim for a violation of the Pennsylvania Constitution. DI 7 at 1-2. But Pennsylvania "does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from [an] alleged violation of the state

deprive him of equal protection and access to the courts, failed to prevent or report the violations of his rights, and treated him differently because he is not an attorney. *Id.* at 3. He requests that we "[d]eclare the authentication contract valid and irrevocable" and issue an "injunction barring Defendants from further retaliatory conduct." *Id.* Additionally, Mr. Dupree seeks declaratory relief and monetary damages in excess of one million dollars. *Id.*

## II.    STANDARD OF REVIEW

We grant Mr. Dupree leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] However, 28 U.S.C. § 1915(e)(2)(B)(ii) requires us to dismiss the complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires that we determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. We also must dismiss a complaint if it is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). A complaint is frivolous under this provision if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Additionally, a claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (citation omitted).

---

constitution." *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (per curiam) (citation omitted).

[4] Because Mr. Dupree is a prisoner, he still must pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act. 28 U.S.C. §§ 1914(a), 1915(b).

Because Mr. Dupree is proceeding *pro se*, we construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citation omitted). We will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (citation omitted). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "abide by the same rules that apply to all other litigants." *Id.* (citation modified) (citation omitted); *Doe v. Allegheny Cnty. Hous. Auth.*, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and apply the applicable law, irrespective of whether the pro se litigant mentioned it [by] name . . . this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.") (citation modified).

## III.  DISCUSSION

Mr. Dupree's amended complaint fails to state any claim to relief. His complaint consists of conclusory recitations of legal verbiage, which are insufficient to give rise to a plausible inference of liability.[5] Liberally construing Mr. Dupree's complaint, we understand him to assert

---

[5] While discussed in detail below, we note that Mr. Dupree's claims are hardly more than passing references to various constitutional provisions such as the Due Process Clause, the Equal Protection Clause, and the Contracts Clause. But a "passing reference to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, 2022 WL 6172286, at *7 n.10 (E.D. Pa. Oct. 7, 2022) (citation modified) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

Mr. Dupree's amended complaint appears to reflect "sovereign citizen" arguments about the existence of contracts between himself and the Philadelphia Court of Common Pleas based on his paying a fee for certified copies of court records and the court mailing them to him. DI 7 at 2-3. This kind of legalistic verbiage lacks merit "because it appears to be predicated on frivolous arguments grounded in sovereign citizen theory and, regardless, does not allege any facts supporting the existence of a due process violation." *Cruz v. Phila Fam. Ct.,* 2025 WL 3290065, at *1 (E.D. Pa. Nov. 25, 2025) (citing *Ibrahim v. New Jersey Off. of Att'y Gen.*, 2021 WL 3012670, at *2 (3d Cir. July 16, 2021) (per curiam)); *United States v. Wunder*, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (discussing the futility of the sovereign citizen verbiage in collection claim for student loan and stating "legal-sounding but meaningless verbiage

4

that his contractual, due process, and equal protection rights have been violated. DI 7 at 2-3. For the following reasons, none of these claims are plausible.

**A.       42 U.S.C. § 1981**

In Count I of his amended complaint, Mr. Dupree avers that the "Defendants, under color of state law, deprived [him] of the right to make and enforce contracts" in violation of, inter alia, 42 U.S.C. § 1981. DI 7 at 2. Section 1981 prohibits private acts of race discrimination in connection with making and enforcing contracts. *Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999) (explaining that section 1981, "on its face, is limited to issues of racial discrimination in the making and enforcing of contracts") (citation omitted). "[T]o establish a basis for relief under section 1981 a plaintiff must show '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981.'" *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)). Mr. Dupree does not include any allegations about race or

---

commonly used by adherents to the so-called sovereign citizen movement" is nothing more than a nullity); *Banks v. Florida*, 2019 WL 7546620, at *1 (M.D. Fla. Dec. 17, 2019), *report and recommendation adopted*, 2020 WL 108983 (M.D. Fla. Jan. 9, 2020) (collecting cases and stating that legal theories espoused by sovereign citizens have been consistently rejected as "utterly frivolous, patently ludicrous, and a waste of . . . the court's time, which is being paid by hard-earned tax dollars"); *see also Miller v. PECO Exelon*, 775 F. App'x 37, 38 (3d Cir. 2019) (per curiam) (affirming dismissal of claims as legally baseless where plaintiff provided no factual or legal support for the conclusion that defendants' refusal to accept his coupons as payment for monies owed for utility services gave rise to a federal cause of action).

Moreover, to establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1998). Mr. Dupree identifies Ms. Martin as a court administrator but does not provide any specific allegations about what she did or did not do to violate his rights. Thus, any claim against Ms. Martin is not plausible for this additional reason.

racial animus.  Notably absent from the amended complaint is any allegation that a defendant "singled out [Mr. Dupree] on account of his race or ethnicity such that the Court could plausibly infer racial animus."  *Kovalev v. Home Depot U.S.A., Inc.*, 2023 WL 2588549, at *11 (E.D. Pa. Mar. 21, 2023), *aff'd*, 2023 WL 7179467 (3d Cir. Aug. 23, 2023) (citation omitted).  Rather, Mr. Dupree alleges that he was discriminated against solely on account of his status as a *pro se* litigant in state court.  DI 7 at 3.  But a litigant's *pro se* status does not satisfy the elements of a § 1981 claim.  *See Finch v. Buechel*, 2005 WL 2807127, at *2 (W.D. Pa. Oct. 26, 2005), *aff'd*, 188 F. App'x 139 (3d Cir. 2006) (granting summary judgment where § 1981 claim was based on purported discrimination against plaintiff based on her *pro se* status and plaintiff failed to establish any facts indicating that defendant exhibited racially discriminatory intent toward her).

      Furthermore, any claim that a contractual relationship protected by § 1981 was formed when Mr. Dupree unilaterally requested copies of documents, and the Philadelphia Common Pleas Court sent them, is legally frivolous.  *See*, *e.g.*, *Ginter v. Harris*, 2013 WL 1635734, at *1 (D. Utah Apr. 16, 2013) (holding that suit based on unilateral claim that a contract existed under the Constitutions of the United States and the State of Utah was frivolous); *Evans v. Fraser*, 2025 WL 1825617, at *1, *4 (D. Minn. May 23, 2025) (holding that § 1981 claim based on *pro se* plaintiff's unilateral "Notice" to bank delineating "non-negotiable" terms for loan was frivolous); *Bozek v. PNC Bank*, 2020 WL 6581491, at *4 (E.D. Pa. Nov. 10, 2020), *aff'd*, 2021 WL 4240359 (3d Cir. Sept. 17, 2021) ("Plaintiff's attempt to form what amounts to a unilateral contract to arbitrate claims fails to meet any of the basic requirement for contract formation.  First and foremost, Plaintiff is completely unable to establish mutual assent to be bound by the Demand Letter and related correspondences.  He fails to aver that any agreement was actually

6

negotiated with Defendants or that Defendants accepted the terms of the agreement."). Thus, any § 1981 claim is legally frivolous, as well.

**B.      42 U.S.C. §§ 1985 and 1986**

In Counts III and IV of the amended complaint, Mr. Dupree contends that defendants Bright, Colton, and Martin violated 42 U.S.C. § 1985(2) and (3) by conspiring to deprive him of equal protection and access to the courts "by engineering a sham proceeding and impersonating a prosecutor." DI 7 at 3. Mr. Dupree also claims that defendant Krasner violated 42 U.S.C. § 1986 by failing "to prevent or report violations of [his] rights despite having notice and authority to act." *Id.*

> Section 1985(2) creates a cause of action against persons who:
>
> conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2). Enacted in response to the intimidation of parties, witnesses, and jurors during post-Civil War social upheaval, the statute "bespeak[s] a Congressional intent to insulate witnesses, parties and grand or petit jurors from conspiracies to pressure or intimidate them in the performance of their duties, and an intent to guard against conspiracies the object of which is to deny citizens the equal protection of the laws." *Brawer v. Horowitz,* 535 F.2d 830, 839 (3d

7

Cir. 1976) (citations omitted).  Section 1985(2) is concerned "with conspiratorial conduct that directly affects or seeks to affect parties, witnesses or grand or petit jurors." *Id.* at 840.

Section 1985(3) creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege the following elements:  (1) a conspiracy; (2) motivated by race-or-class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to one's person or property or the deprivation of any right or privilege of a U.S. citizen.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997) (citations omitted).  Significantly, "'[t]he [statutory] language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (citation omitted).  Moreover, a plaintiff must allege specific facts to sustain a § 1985(3) claim:

> With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3).  A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) (citation modified) (citations omitted); *see also Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient."). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox*

8

*Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted).  "[A] bare assertion of conspiracy will not suffice."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Mr. Dupree's conspiracy allegation regarding defendants Bright, Colton, and Martin fails for several reasons.  First, there is no allegation that a conspiracy was motivated by racial or class-based discriminatory animus as required by § 1985(3).  Again, Mr. Dupree makes no contention that his race was the motivation behind the defendants' actions.  Rather, Mr. Dupree only alleges that he was discriminated against because he is a *pro se* litigant.  DI 7 at 3.  *Pro se* status is not a protected class for purposes of stating a § 1985 claim.  *See Finch*, 2005 WL 2807127, at *3 ("Regardless of which of these two subsections of § 1985 that she seeks to invoke, Finch cannot prevail on her claim because she only asserts class-based invidious discrimination as a *pro se* litigant.") (citation modified); *Brik v. Brodie*, 2024 WL 1604194, at *6 (E.D.N.Y. Apr. 12, 2024) (collecting cases and stating that *pro se* status is not an "'immutable' quality beyond the class members' control").  Also, as to both sections, Mr. Dupree asserts the existence of a conspiracy only in conclusory terms and provides no facts from which a conspiratorial agreement may be inferred.  *Groce v. City of Philadelphia. L. Dep't*, 2022 WL 493418, at *7 (E.D. Pa. Feb. 17, 2022) (dismissing conspiracy claim as wholly conclusory where the plaintiff failed to allege facts regarding the formation of a conspiracy between any defendants or any other individuals, the period of the conspiracy, or actions taken by the alleged conspirators to achieve the alleged purpose thereof) (citations omitted).

Because § 1986 is derivative of § 1985, any claims brought under this statute as to defendant Krasner also fail.  *Dennison v. Pa. Dep't. of Corr.*, 268 F. Supp. 2d 387, 402 n.10 (M.D. Pa. 2003) (citations omitted); *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994)

9

("[T]o maintain a cause of action under § 1986, [plaintiff] must show the existence of a § 1985 conspiracy."). Accordingly, these claims are dismissed without prejudice.

## C. Constitutional Claims under § 1983

Mr. Dupree alleges various other constitutional violations. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). We thus turn to Mr. Dupree's purported constitutional bases for his section 1983 claims.

### 1. Contracts Clause

The Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. 1, § 10, cl. 1. In evaluating a Contracts Clause claim, a court determines whether (1) a contractual relationship exists; (2) a change in a law impaired that relationship; and (3) the impairment was substantial. *Transport Workers Union of America, Local 290 v. Southeastern Pennsylvania Transportation Authority,* 145 F.3d 619, 621 (3d Cir.1998) (citations omitted). Significantly, the Contract Clause's prohibition "is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." *Wolfe v. Beard*, 2010 WL 5173199, at *4 (E.D. Pa. Dec. 9, 2010) (citing *New Orleans Waterworks Company v. Louisiana Sugar Refining Company,* 125 U.S. 18, 30 (1888)). Accordingly, a court must first consider whether there is any act of state legislation allegedly underlying the claim. *St. Paul Gaslight Co. v. St. Paul,* 181 U.S. 142, 147-48 (1901).

Mr. Dupree fails to plausibly allege a Contracts Clause claim. He alleges that the "unlawful revocation of a public contract by the CCP, under [Judge] Bright and Martin's administrative direction, impaired an existing obligation, violating the Contracts Clause. DI 7 at 3. Mr. Dupree's allegations do not reference a contractual relationship or how such relationship was impaired, and therefore this claim is not plausible as alleged. Regardless, because Mr. Dupree alleges action by the state judiciary as opposed to the legislative power of the state, he cannot establish a Contracts Clause violation. We thus dismiss this claim without prejudice.

**2.    Fourteenth Amendment Equal Protection Claim**

In Count VII, Mr. Dupree contends that "as a pro se litigant, [he] was treated disparately compared to attorneys." *Id.* He further avers that "[t]his discrimination is rooted in municipal custom and constitutes a denial of equal protection." *Id.* "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, a plaintiff must allege facts to show it is plausible that he was treated differently than other similarly situated persons, and that this different treatment was the result of intentional discrimination based on his membership in a protected class. *Hassan v. City of New York*, 804 F.3d 277, 294, 298-99 (3d Cir. 2015). Again, *pro se* status is not a protected class. *Brik*, 2024 WL 1604194, at *6; *Doyle v. Arete Fin. Grp. LLC*, 2022 WL 17253587, at *2 (D.N.J. Nov. 28, 2022) (stating that "Plaintiff has provided no authority, and the Court is aware of none, holding that a person's status as a pro se litigant is a suspect class" and collecting cases holding the contrary). Mr. Dupree does not allege that he is a member of a protected class, nor does he

11

identify other individuals similarly situated nor that he has been treated differently than those individuals. Accordingly, Mr. Dupree's claims under the Equal Protection clause of the Fourteenth Amendment fail and are dismissed without prejudice.

### 3. Fourteenth Amendment Due Process Claim

We understand Mr. Dupree to assert procedural and substantive due process claims under the Fourteenth Amendment, asserting in Count VI that "his contractual rights were revoked without process or justification" with respect to the two contracts that were allegedly formed in August 2017. DI 7 at 2-3.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a plausible Fourteenth Amendment due process claim, Mr. Dupree must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Rosado v. City of Coatesville*, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)). To establish a due process violation, a person must first demonstrate that he has been deprived of a constitutionally protected property or liberty interest. *Daniels v. Williams*, 474 U.S. 327, 339 (1986); *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010). Mr. Dupree has not alleged any facts indicating that he was deprived of any status or entitlement protected by the Fourteenth Amendment.[6]

---

[6] In fact, the Third Circuit recognizes only two types of contractual rights that give rise to property interests sufficient for a procedural due process claim. *See Jones v. Twp. of Middletown*, 2011 WL 3157143, at *5 (E.D. Pa. July 26, 2011) (citing *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991)). The first type "arises where the

Moreover, Mr. Dupree's § 1983 claims relating to these alleged contracts are time-barred because they are subject to Pennsylvania's two-year statute of limitations. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (the timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kehres v. Pennsylvania*, 262 F. App'x. 466, 470 (3d Cir. 2008) (per curiam) (explaining that the statute of limitations for a due process claim under section 1983 is two years even though she raised a contractual interference claim). A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). In general, this means that the statute of limitations begins running when the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). "[T]he limitations period starts to run at this time even if the full extent or severity of the injury is not yet known." *Alexis v. Connors*, 2024 WL 3534480, at *2 (3d Cir. July 25, 2024) (per curiam) (citing *Kach*, 589 F.3d at 634-35; *Wallace*, 549 U.S. at 391).

"Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110,

---

contract confers a *protected status,* such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both . . . .'" *Id.* (citation modified) (citing *Unger*, 928 F.2d at 1399; *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988)). The second type, applicable generally in the context of employment termination, "arises where the contract itself includes a provision that the state entity can terminate the contract only for cause." *Id.* (citing *Unger*, 928 F.2d at 1399). Neither of these situations applies here.

111-12 (3d Cir. 2013) (per curiam); *see also Harris v. Stash*, 2023 WL 1990531, at *2 (3d Cir. Feb. 14, 2023) (per curiam) ("[A] court may dismiss claims *sua sponte* if a time-bar is obvious from the face of the complaint and no further development of the record is necessary."), *cert. denied*, 144 S. Ct. 579 (2024). Because it is facially apparent that Mr. Dupree's claims relating to contracts formed in August 2017 concerning a request for authenticated records are time barred, and he offers no basis for equitable tolling,[7] his due process claims are dismissed without prejudice.

4. **Municipal Liability Claims**

Mr. Dupree alleges that the City of Philadelphia and Mayor Parker, who solely is named in her official capacity, "maintained customs and failed to train personnel in a manner that resulted in discriminatory practices against pro se litigants." DI 7 at 3. Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation modified) (quoting *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, to the extent that Mayor Parker is sued in her official capacity, any such claims are dismissed as duplicative of the claims against the City of Philadelphia. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District.") (citation omitted); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin

---

[7] *Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986, 995 (Pa. 2020) (explaining that, as a general matter, "[t]he doctrine of equitable tolling [extends] a statute of limitations when a party, through no fault of its own, is unable to assert its right in a timely manner.") (citation omitted).

14

in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citation omitted).

A municipality such as the City of Philadelphia is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining local governments can be liable under § 1983 only for "their *own* illegal acts" rather than those of their employees) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, to plead a § 1983 claim against a municipality, such as the City of Philadelphia, a plaintiff must allege that the City's policy or custom caused the violation of his constitutional rights.[8] *See Monell*, 436 U.S. at 694. A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."[9] *Forrest*

---

[8] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[9] "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citation omitted). "Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (citation modified) (citation omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely . . . result in the violation of constitutional rights — *i.e.*, to show that the need for more or different training was so obvious." *Id.* (citation modified) (citation omitted).

*v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citations omitted).

      To the extent that Mr. Dupree seeks damages from Mayor Parker in her official capacity, or from the City of Philadelphia, he has failed to allege facts that support *Monell* liability. Mr. Dupree does not identify any City policy or custom that caused the alleged constitutional violations. Nor does he describe a pattern of constitutional violations nor an obvious need for training or supervision that would raise a plausible inference that the City violated his constitutional rights.

      Mr. Dupree's conclusory allegation that the "City and Parker maintained customs and failed to train personnel in a manner that resulted in discriminatory practices against pro se litigants" is not sufficient. DI 7 at 3. *See, e.g.*, *Phillips v. Northampton Cnty.*, 687 F. App'x 129, 132 (3d Cir. 2017) (affirming dismissal of *Monell* claims where the complaint contained "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct" based on "no facts to support the existence of any policy, custom, or practice beyond those involving [the plaintiff's] own [experiences]"); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a § 1983 claim under *Monell*); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of

liability, are insufficient to state a claim for § 1983 liability under *Monell*"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018).

Moreover, because Mr. Dupree has not adequately pled a plausible underlying constitutional violation, there is no basis for a *Monell* claim against the City of Philadelphia. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . . it is inconceivable that [the municipality] could be liable"). Accordingly, the official capacity claim against Mayor Parker, as well as the claims against the City of Philadelphia are not plausible and will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, we grant Mr. Dupree leave to proceed *in forma pauperis* and dismiss his amended complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) because his claims are either frivolous or fail to state a claim for relief.