**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICHOLAS DUPREE,**<br>**Plaintiff,**<br><br>**v.**<br><br>**GWENDOLYN N. BRIGHT, *et al.*,**<br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br><br>**NO. 25-3230** |

**MEMORANDUM**

**MURPHY, J.** **August 27, 2026**

In a prior memorandum and order filed January 28, 2026 (DI 13, 14), the court dismissed the amended complaint[1] filed by Nicholas Dupree, an inmate incarcerated at SCI Benner Township, as frivolous and because it failed to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). *See Dupree v. Bright*, No. 25-3230, 2026 WL 222534 (E.D. Pa. Jan. 28, 2026). Mr. Dupree was granted leave to proceed *in forma pauperis* and leave to file a second amended complaint addressing the deficiencies identified by the court, if the facts allowed him to do so. DI 15. Mr. Dupree has since returned with a second amended complaint (SAC) seeking declaratory and injunctive relief, as well as monetary damages, pursuant to 42 U.S.C. § 1983. DI 26. The SAC names as defendants the City of Philadelphia, and Gwendolyn N. Bright and

[1] Dupree initiated this civil rights action on June 23, 2025 by filing a *pro se* complaint seeking declaratory and injunctive relief, as well as monetary damages. DI 2. Shortly thereafter, he filed an amended complaint that became the operative pleading. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that "an amended pleading supersedes the original pleading," meaning "the most recently filed amended complaint becomes the operative pleading"); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings.").

Colton D. Brown, in their official and individual capacities.[2] DI 26 at 3. For the following reasons, the second amended complaint will be dismissed with prejudice.

## I. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[3]

On September 14, 2012, following a jury trial, Mr. Dupree was convicted in the Philadelphia Court of Common Pleas of involuntary deviate sexual intercourse (IDSI), incest, corruption of minors, and aggravated indecent assault. *See Dupree v. Wetzel*, No. 20-2392, 2023 WL 5487650, at *1 (E.D. Pa. Aug. 23, 2023); *Commonwealth v. Dupree*, CP-51-CR-0000172-2010 (C.P. Phila.). On May 13, 2013, Mr. Dupree was sentenced to a mandatory minimum of 10 to 20 years imprisonment for IDSI, and a consecutive 4 to 8 years for aggravated indecent assault and terms of probation. *Id.* On May 22, 2013, he filed a motion for reconsideration that was denied. *Id.* Mr. Dupree appealed, and the Pennsylvania Superior Court affirmed the judgment of conviction and sentence on July 29, 2014. *Id.*

On July 27, 2015, Mr. Dupree filed a *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), and his petition was denied without a hearing on January 29, 2019. *Id.* at *2. He appealed the dismissal to the Pennsylvania Superior Court, asserting that because the state court conviction was "procured by fraud," the criminal judgment was "void," and he was entitled to an "unconditional discharge and equitable relief by operation of the Due

---

[2] Dupree named Cherelle Parker, Kathleen Martin, Jerrold D. Colton, and Lawrence S. Krasner in the Amended Complaint but does not name these individuals as Defendants in the SAC and therefore has abandoned any claims against Parker, Martin, Colton, and Krasner.

[3] Unless otherwise stated, the factual allegations set forth in this Memorandum are taken from Dupree's Second Amended Complaint (DI 26). The Court adopts the sequential pagination assigned by the CM/ECF docketing system. On statutory screening, the Court may also consider publicly available court records. *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Where the Court quotes from the Second Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up if needed for clarity.

Process Clause of the Fourteenth Amendment." *Id.*; *see also Commonwealth v. Dupree*, 467 EDA 2019, 2020 WL 3057342, at *1 (Pa. Super. Ct. June 8, 2020). In short, Mr. Dupree alleged that a fraudulent charging document was used during his state court prosecution in CP-51-CR-0000172-2010. *Dupree*, 2020 WL 3057342, at *2. On June 8, 2020, the Superior Court rejected his claim and affirmed the dismissal of his PCRA petition.[4] *Id.* at *3.

---

[4] In affirming the dismissal of Dupree's PCRA petition, the Pennsylvania Superior Court concluded that the PCRA court's determinations were "supported by the record and free of legal error." *Dupree*, 2020 WL 3057342, at *3. In so doing, the Superior Court reiterated the PCRA Court's findings, stating as follows:

> The primary thrust of [Dupree]'s complaints center about his misguided belief that the bills of information are fraudulent thereby negating the court's jurisdiction over him; and, that anything or anyone related to those documents are engaged in a fraudulent conspiracy to deprive him of due process. This is a bogus, unfounded claim.
>
> [Dupree] seeks to benefit from the resignation of Seth Williams as Philadelphia District Attorney and his subsequent 2017 criminal conviction in federal court. At the time of [Dupree]'s arrest in 2009, throughout trial and sentencing in 2013, Williams was the Philadelphia District Attorney. The Commonwealth has supplied a copy of the original bills of information signature page bearing William's signature dated 1/20/2010.
>
> When Williams resigned as Philadelphia District Attorney in June 2017, Kathleen Martin held the position of First Assistant District Attorney, and as such, rightfully assumed his duties until an Interim District Attorney was appointed by the First Judicial Common Pleas Court Judges. Kelly B. Hodge was appointed to the interim position in July 2017. The bills of information generated for [Dupree] at his request in 2017 bore Martin's signature for which the Commonwealth offered an explanation. There was no forgery; there was no fraud.
>
> Here, Williams's signature was on the original charging document. Moreover, Martin's signature on documents generated during her time as acting district attorney would be valid. The laws of Pennsylvania, address precisely this situation for counties of the first class, such as Philadelphia:
>
>> 16. P.S. § 7723 - The District attorney shall have the power to designate and appoint one of the assistant district attorneys, herein provided for, as his first assistant, who shall, in the absence of the district attorney from the jurisdiction or during his disability to perform the duties of his office through sickness or other cause, be vested with all the duties, powers, and privileges now given by law to the district attorney, and generally, at such times, be empowered to do and

In April 2020, Mr. Dupree filed *pro se* habeas petitions pursuant to 28 U.S.C. § 2254 challenging his conviction in CP-51-CR-0000172-2010. *Dupree*, 2023 WL 5487650, at *1; *see also* Civil Action No. 20-2392. Mr. Dupree argued, *inter alia*, "that [Kathleen] Martin signed his original charging document in 2010 without the authority to do so, rendering the trial court's jurisdiction, and his conviction, constitutionally defective" in violation of his due process rights. *Id.* The habeas court, however, concluded that Seth Williams, who was the Philadelphia District Attorney in 2010, signed Mr. Dupree's original charging document in 2010. *Id.* (citing *Dupree*, 2020 WL 3057342, at *2-3). The habeas court also noted that Kathleen Martin assumed the position of acting Philadelphia District Attorney in 2017, and when Mr. Dupree requested his state record for his PCRA appeal in 2017, he received a charging document that included Martin's computer-generated signature. *Id.* Mr. Dupree's claim was dismissed by the habeas court as meritless because the "state courts determined that Williams' signature appears on the original charging document, and that Martin's electronic signature was automatically generated on the 2017 copy." *Id.* (citing *Dupree*, 2020 WL 3057342, at *3). Mr. Dupree filed a request for a certificate of appealability to the United States Court of Appeals for the Third Circuit, but his request was denied on March 19, 2024. *Dupree v. Sec'y Pa. Dep't of Corr.*, No. 23-2784, 2024 WL 1344587, at *1 (3d Cir. Mar. 19, 2024).

In the SAC, Mr. Dupree asserts that he brings this action as an "accused in a criminal court case, Information No. CP-51-CR-0000172-2010, seeking declaratory and injunctive relief"

---

> > perform all things in connection with his office which the district attorney may be law be entitled to do or perform.
>
> [Dupree] is not entitled to relief based on this speculative claim. Error was not committed.

*Dupree*, 2020 WL 3057342, at *2-3 (citing PCRA Court Opinion, 6/13/19, at 3-4).

to enjoin the defendants "from pulling a bait and switch with the only information ever provided to him." DI 26 at 1. He avers that in August 2017, he requested and "paid for certified and attested copies of the information" in his state criminal case, *Dupree*, CP-51-CR-0000172-2010, from the Philadelphia County Office of Judicial Records. *Id.* at 1, 3, 13-17. Mr. Dupree contends that because the state court clerk accepted his request, retained payment, and "issued a certification and attestation under signature and seal as to the authenticity of the specific bills of information provided" to him, "an implied-in-fact contract" was formed under Pennsylvania law. *Id.* at 1. He claims that the "authenticated bills of information signed by Kathleen Martin were the only charging instrument ever furnished to him" and that information "formed the foundation of his defense, his collateral litigation, and his understanding of the scope of any prosecutorial and judicial authority" in his criminal case. *Id.* at 3. Mr. Dupree contends that the state court clerk became the "legal authenticator" when he or she "certified Martin's information." *Id.* He claims that by doing so, an "implied in fact contract" was formed and, because of this, the "93 judges of the Court of Common Pleas," including defendant Bright, are now "constitutionally foreclosed from entertaining any claims that contradict the certification" of Martin.[5] *Id.* at 2.

Mr. Dupree has also filed pleadings in state court "seeking enforcement of the rights arising from the certified instrument" he received in 2017 bearing Martin's electronic signature.[6]

[5] Dupree attached a copy of the information he received as an exhibit to the SAC. DI 26 at 32-36. The information, which pertains to his state criminal case, CP-51-CR-0000172-2010, was printed on August 16, 2017, and bears an electronic signature of Kathleen Martin. *Id.* at 36.

[6] Dupree filed a "Petition for Specific Performance" with the Philadelphia Office of Judicial Records on December 23, 2022. DI 26 at 39-55. In the petition, Dupree sought "immediate release from an unlawful detention at CP-51-CR-0000172-2010" because "the agreed upon information" signed by Martin "was completely incapable of receiving legal cognizance." *Id.* at 54. Dupree also filed an "Application for Summary Judgment," dated May 27, 2025, asserting similar claims to the SAC. *Id.* at 57-60. In that motion, Dupree asserts that "the prosecuting party [*i.e.*, Martin] . . . lacked legal authority at the time of initiation" and the

*Id.* at 3-4. He contends that "after learning of [his] contract-based and record-based claims," Bright and Brown committed "out-of-court acts" to obstruct his state court pleadings and "prevent a decision on the merits." *Id.* at 4. He also claims that on June 20, 2025, Brown provided him "with a document that was not the full authenticated instrument previously furnished by the clerk" to "conduct a 'bait and switch' with the charging instrument certified by the clerk." *Id.* at 4, 62. Attached to the SAC is a copy of the final page of the Information in Mr. Dupree's state court criminal case, bearing a date of January 20, 2010 and Williams's signature. *Id.* at 62. Mr. Dupree avers that Bright "directed that this substitution occur" and Brown "carried it out" without noting the "substitution" on the record. *Id.* at 4. Dupree avers that "Defendants' purpose was to obstruct [his] nonfrivolous efforts to obtain judicial relief, to censor [him] . . . and to prevent liabilities from accruing against themselves and the City." *Id.*

Dupree asserts that the Defendants "act[ed] outside of the four corners of the original information signed by Kathleen Martin, [and] acted in complete absence of all jurisdiction." *Id.* at 2. As a result, he contends that they are "liable for purely administrative and extrajudicial acts" that violated his Sixth and Fourteenth Amendment rights. *Id.* He alleges that during video conference hearings held between June 9, 2025 and September 22, 2025, Defendants Bright and Brown, "acting individually and in concert with the City of Philadelphia, . . . fabricated evidence, redacted court documents, and swapped the information that was certified by the clerk" in violation of his due process rights. *Id.* at 2. He claims that the Defendants "deviat[ed] from their own charging documents" during collateral proceedings. *Id.* at 2, 4. He contends that because they acted "outside traditional adjudicative or prosecutorial functions by fabricating, redacting,

---

Court had "no judicial power to conduct a prosecution from a void charging instrument." *Id.* at 58. Dupree asserted that the "only lawful remedy" was to vacate his conviction and discharge him. *Id.* at 59-60.

suppressing, and substituting charging materials and by obstructing filed pleadings," they are not entitled to immunity. *Id.* at 6.

Dupree also asserts a *Monell* claim[7] against the City of Philadelphia, claiming that it used "its powers and political influences to avoid accrual of liabilities under Heck v. Humphrey"[8] and by "ratifying customs" to deny meaningful access to the Philadelphia Court of Common Pleas "by swapping out indictments or criminal informations if it believes" that those documents would "give rise to meritorious litigation that may impugn or invalidate a wrongful conviction." *Id.* at 1, 6.

Based on the foregoing, Dupree asserts the following claims: denial of access to the courts in violation of the First and Fourteenth Amendments (*id.* at 7); retaliation in violation of the First Amendment (*id.* at 8); and a denial of procedural due process in violation of the Fourteenth Amendment (*id.* at 8-9). He seeks declaratory relief that the "alleged fabrication, redaction, suppression, and substitution of charging materials outside any recorded hearing" violated his constitutional rights under the First and Fourteenth Amendments. *Id.* at 9, 11. He seeks injunctive relief preventing Defendants from, *inter alia*, substituting any charging instrument or interfering with the certification of "the lawful records custodian in a manner that prevents adjudication on a complete and honest record." *Id.* at 10, 11. He also seeks monetary damages. *Id.* at 10.

---

[7] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

[8] *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

## II. STANDARD OF REVIEW

Because Dupree is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Second Amended Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant. Section 1915(e)(2)(B)(i) requires the Court to dismiss the Second Amended Complaint if it is frivolous, and § 1915(e)(2)(B)(ii) requires dismissal if it fails to state a claim upon which relief may be granted. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Brown v. City of Philadelphia*, 750 F. App'x 171, 173 (3d Cir. 2018) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]" *Id.* at 327-28; *see also Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Smith v. N. Cambria Police,* No. 25-1273, 2025 WL 1324070, at *1 (3d Cir. May 7, 2025) (*per curiam*) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). A claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back). The Court is mindful of the obligation to liberally construe a *pro se* litigant's pleadings, *see Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), particularly where the *pro se* litigant is imprisoned. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013).

Whether the Second Amended Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). Section 1915 also requires the dismissal of claims for monetary relief brought against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also, e.g., Rauso v. Giambrone*, 782 F. App'x 99, 101 (3d Cir. 2019) (*per curiam*) (holding that § 1915(e)(2)(B)(iii) "explicitly states that a court shall dismiss a case 'at any time' where the action seeks monetary relief against a defendant who is immune from such relief"); *Ellison v. Smith,* 778 F. App'x 195, 196 (3d Cir. 2019) (*per curiam*) ("A District Court is authorized to dismiss a complaint sua sponte on the immunity grounds of § 1915(e)(2)(B)(iii) when it is clear on the face of the complaint that a party is immune from suit.").

## III. DISCUSSION

Dupree's allegations that an "implied in fact contract" was formed in August 2017 when he requested and "paid for certified and attested copies of the information" from the Philadelphia County Office of Judicial Records "rise to the level of the irrational or the wholly incredible[,]" *Denton*, 504 U.S. at 32, and are appropriately dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because they lack a basis in fact.

We have conducted an exhaustive review of Dupree's court filings and state criminal proceedings, and understand that Dupree ultimately seeks a ruling that the criminal information bearing Martin's computer-generated signature, that he received in 2017, is the "authenticated"

charging document and, because of this, the "93 judges of the Court of Common Pleas," including Bright, and District Attorney Brown, are now "constitutionally foreclosed from entertaining any claims that contradict [Martin's] certification." DI 26 at 1-3. Dupree contends that the Defendants "act[ed] outside of the four corners of the original information signed by Kathleen Martin, [and] acted in complete absence of all jurisdiction" when he was charged in 2010 and convicted in 2012. *Id.* at 2.

Dupree's pleadings, including the SAC, consist of conclusory recitations of legal verbiage, which are insufficient to give rise to a plausible inference of liability. In particular, the SAC reflects "sovereign citizen" arguments about the existence of a contract between himself and the Philadelphia Court of Common Pleas based on his paying a fee for certified copies of court records and the court mailing them to him. This kind of legalistic verbiage lacks merit "because it appears to be predicated on frivolous arguments grounded in sovereign citizen theory and, regardless, does not allege any facts supporting the existence of a due process violation." *Cruz v. Phila Fam. Ct.,* No. 25-6270, 2025 WL 3290065, at *1 (E.D. Pa. Nov. 25, 2025) (citing *Ibrahim v. New Jersey Off. of Att'y Gen.*, No. 21-1129, 2021 WL 3012670, at *2 (3d Cir. July 16, 2021) (*per curiam*)); *United States v. Wunder*, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (discussing the futility of the sovereign citizen verbiage in collection claim for student loan and stating "legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" is nothing more than a nullity); *Banks v. Florida*, No. 19-756, 2019 WL 7546620, at *1 (M.D. Fla. Dec. 17, 2019), *report and recommendation adopted*, 2020 WL 108983 (M.D. Fla. Jan. 9, 2020) (collecting cases and stating that legal theories espoused by sovereign citizens have been consistently rejected as "utterly frivolous, patently ludicrous, and a waste of . . . the court's time, which is being paid by hard-earned tax

dollars"); *see also Miller v. PECO Exelon*, 775 F. App'x 37, 38 (3d Cir. 2019) (*per curiam*) (affirming dismissal of claims as legally baseless where plaintiff provided no factual or legal support for the conclusion that defendants' refusal to accept his coupons as payment for monies owed for utility services gave rise to a federal cause of action).

Dupree has also been advised by several courts that his allegations concerning the use of a fraudulent charging document are frivolous. As recently as June 24, 2024, the Pennsylvania Superior Court affirmed the dismissal of Dupree's *pro se* petition for a writ of *habeas corpus*, noting as follows:

> Dupree was charged at docket number CP-51-CR-0000172-2010 in Philadelphia. He was convicted and sentenced, and he is currently serving his sentence in Centre County. On February 2, 2023, Dupree filed a petition for writ of *habeas corpus* in the Court of Common Pleas of Centre County. Essentially, Dupree claimed that in 2017, he entered a contract with prison authorities and the Philadelphia Office of Judicial Records to obtain an accurate copy of the information in his criminal case. The copy that Dupree received bore the signature of the acting district attorney in 2017, rather than the district attorney when Dupree was charged in 2010. Dupree reasoned that the courts must accept the document that he received as true, which to Dupree meant that his charges are void. Dupree thus argued that under principles of contract law and constitutional due process, his criminal proceeding was void, his judgment of sentence must be vacated, and he must be discharged. **The trial court dismissed the action as frivolous on February 17, 2023. It noted that this Court had rejected a similar claim of Dupree's on appeal from the denial of his petition under the [PCRA].** *See Commonwealth v. Dupree*, 237 A.3d 1040 (Table), 2020 WL 3057342, at *2-3 (Pa. Super. 2020) (non-precedential decision).

*Dupree v. Houser*, 323 A.3d 223 (Pa. Super. Ct. 2024) (bolded emphasis added), *reargument denied* Aug. 29, 2024.

Dupree asserted the same arguments in this court, in connection with his § 2254 habeas petition. On August 23, 2023, Judge Cynthia M. Rufe denied Dupree's habeas petition, restating the following relevant facts:

> [Dupree] raises several claims resulting from the prosecution and trial court's use of an allegedly fraudulent charging document. Seth Williams, who was the Philadelphia District Attorney in 2010, signed [Dupree's] original charging

> document. Kathleen Martin assumed the position of acting District Attorney in 2017. When [Dupree] requested his state record for a [PCRA] appeal in 2017, he received a charging document that included Martin's computer-generated signature. [Dupree] argues that Martin signed his original charging document in 2010 without the authority to do so, rendering the trial court's jurisdiction, and his conviction, constitutionally defective.

*Dupree*, 2023 WL 5487650, at *1. Dupree sought habeas relief by asserting, *inter alia*, that his "due process rights were violated because the prosecution used a false charging instrument." *Id.* at *2. Judge Rufe concluded that this claim was meritless, stating as follows:

> [T]he state courts determined that Williams' signature appears on the original charging document, and that Martin's electronic signature was automatically-generated on the 2017 copy. [Dupree] has offered no evidence to rebut the factual determinations of the state courts.

*Id.* (citing *Dupree*, 2020 WL 3057342, at *3.) Dupree filed a request for a certificate of appealability with the Third Circuit, but his request was denied on March 19, 2024. *Dupree*, 2024 WL 1344587, at *1. In denying the request, the Third Circuit concluded as follows:

> Jurists of reason would not debate the District Court's decision. [Dupree] raised six claims in his petition under 28 U.S.C. § 2254, all of which were based on his belief that the Commonwealth used "counterfeit" charging documents that were signed by Kathleen Martin, who was not the Philadelphia District Attorney at the time that he was charged. The Pennsylvania Superior Court rejected that premise, accepting the Post Conviction Relief Act court's finding that the original charging documents were properly signed in 2010 by then-District Attorney Seth Williams. When [Dupree] requested a copy of his state court record in 2017, the Commonwealth produced charging documents bearing an automatically-generated signature of Martin, who assumed the position of acting District Attorney that year. Jurists of reason would not debate the District Court's conclusion that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts.

*Id.* (citations omitted). Accordingly, Dupree's claims regarding a purported "implied-in-fact" contract and fraudulent charging document will be dismissed as frivolous. Dupree's SAC also fails to state a claim for relief for the additional reasons that follow.

Dupree's claims against Judge Bright are not plausible because judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See, e.g., Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). "Immunity will not be forfeited because a judge has committed 'grave procedural errors,' or because a judge has conducted a proceeding in an 'informal and ex parte' manner', . . . [or] because the judge's action is 'unfair' or controversial." *Gallas*, 211 F.3d at 769 (citations omitted).

As Dupree's claims against Judge Bright are based on acts she took in her judicial capacity while presiding over post-conviction proceedings for which she clearly could exercise jurisdiction as a judge of the Court of Common Pleas (*see* DI 26 at 3-4, 37, 55), Judge Bright is entitled to absolute judicial immunity from Dupree's claims. *See, e.g., Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of

their judicial immunity"); *Palmer v. PHA*, No. 21-2906, 2021 WL 3662401, at *4 (E.D. Pa. Aug. 17, 2021) (judges are entitled to absolute judicial immunity based on acts they took in their official capacities while presiding over eviction proceeding); *Martin v. Bicking*, 30 F. Supp. 2d 511, 513 (E.D. Pa. 1998) (District justice was judicially immune from liability for actions taken by justice arising out of plaintiff's trial and sentencing for summary offenses).

Further, with respect to Dupree's claims against Defendant Brown, it is well settled that prosecutors are entitled to absolute immunity from liability for damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024). Absolute immunity extends to the decision to initiate a prosecution, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," presenting a state's case at trial, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (cleaned up);[9] *see also Sanders v. City of Erie*, No. 26-1135, 2026 WL 1428876, at *2 (3d Cir. May 21, 2026) (*per curiam*) ("[A] district attorney acting 'within the scope of his duties in initiating and pursuing a criminal prosecution' is immune from suit, even when a litigant alleges a lack of probable cause." (quoting *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997))).

Dupree alleges that Brown "conduct[ed] a 'bait and switch' with the charging instrument certified by the clerk" and "deviat[ed] from [his] own charging documents" during collateral proceedings. DI 26 at 2, 4. These allegations arise from Brown's role as an advocate for the

[9] *See also id.* at 164 (3d Cir. 2020) (prosecutors were entitled to immunity from claims based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial").

Commonwealth during the post-conviction phase of Dupree's prosecution, and his actions are thus protected by absolute immunity. *See Yarris v. County of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006) ("Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether . . . [he] was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation."); *see also Fogle*, 957 F.3d at 164; *Imbler*, 424 U.S. at 431. Beyond his conclusory statement that Brown acted "outside traditional adjudicative or prosecutorial functions," DI 26 at 6, there is no allegation that the conduct arose from an investigative phase of the case, or that Brown was performing an administrative function separate from his advocacy role. *Cf. Giuffre v. Bissell*, 31 F.3d 1241, 1253 (3d Cir. 1994) (holding that a prosecutor facilitating the sale of plaintiff's property pursuant to an immunity agreement was a strictly administrative function not entitled to absolute immunity); *Schrob v. Catterson*, 948 F.2d 1402, 1419 (3d Cir. 1991) (holding that prosecutor's "management of and negotiations concerning return of . . . [seized] property [was] not directly related to the judicial process" and therefore not entitled to judicial immunity).

Finally, Dupree names the City of Philadelphia as a Defendant, asserting that the City used "its powers and political influences to avoid accrual of liabilities under Heck v. Humphrey" and by "ratifying customs" to deny meaningful access to the Philadelphia Court of Common Pleas "by swapping out indictments or criminal informations if it believes" that those documents would "give rise to meritorious litigation that may impugn or invalidate a wrongful conviction." DI 26 at 1, 6. However, the City of Philadelphia is not responsible for the events that took place in Dupree's Pennsylvania state court judicial proceedings because the Philadelphia County Court of Common Pleas is not a City agency. It is part of Pennsylvania's unified judicial system. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) (holding that under the

Pennsylvania Supreme Court's interpretation of the state constitution, judicial districts and its counterparts are state entities). Thus, "individual counties cannot be held liable for the actions of state court judges, who are part of the unified state court system." *Andresen v. Pennsylvania*, No. 20-989, 2020 WL 9048845, at *6 (M.D. Pa. Dec. 16, 2020) (internal quotations and citations omitted), *report and recommendation adopted*, No. 20-989, 2021 WL 1174497 (M.D. Pa. Mar. 29, 2021); *see Callahan v. City of Philadelphia*, 207 F.3d 668, 672-74 (3d Cir. 2000) (explaining that judges of the Pennsylvania Court of Common Pleas are part of the unified judicial system subject to the control of the Pennsylvania Supreme Court). "Simply put, one cannot sue a county in federal court for civil rights violations arising out of the conduct of litigation in the county court of common pleas, since the courts are a state agency, and not part of county government." *Andresen*, 2020 WL 9048845, at *6; *see also Scheib v. Pennsylvania*, 612 F. App'x 56, 59 (3d Cir. 2015) (*per curiam*) ("It appears that [plaintiff] named the County as a defendant because she mistakenly believes that the Allegheny County Court of Common Pleas is a County entity. As the District Court correctly noted, however, the court is a Commonwealth—not County—entity. Therefore, [plaintiff's] claims against the Court of Common Pleas are . . . barred by the Eleventh Amendment.") (citation modified). Accordingly, the claim against the City is meritless.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Dupree's Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as frivolous and/or for failure to state a claim. His claims will be dismissed with prejudice and without leave to amend since any attempt would prove futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002) ("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend . . . when amendment is inequitable or futile.") (citations omitted).

An appropriate Order dismissing this case will be entered separately. *See* Federal Rule of Civil Procedure 58(a).